■ JAMES DALY, Respondent, v 9 EAST 36TH LLC, Appellant. [61 NYS3d 206]—

Order, Supreme Court, New York County (David B. Cohen, J.), entered on or about September 13, 2016, which denied defendant's motion for summary judgment dismissing the complaint, affirmed, without costs.

Defendant is the owner of a building located at 9 East 36th Street. On June 19, 2013, plaintiff, a tenant in the building, sustained personal injuries from a fire in his rent-stabilized studio apartment. The fire was described in the Fire Incident Report of the fire department's Bureau of Fire Investigation as originating "in [an] area of electrical wiring"; the report also noted the presence of "multiple extension cords plugged in to one outlet with [a] power strip."

The apartment building was built in the 1930s. Plaintiff's apartment, which he shared with his wife, had three electrical outlets in the main living space, with additional ones in the hall, the bathroom, and the kitchen, and there is no evidence that any interior electrical upgrade had ever been done. Before the fire, on several occasions, plaintiff had requested of defendant, through the building superintendent, that more outlets be installed, and he had shown the superintendent that the existing receptacles were in disrepair. Plaintiff wanted to alleviate the insufficient number and placement of outlets, which required him to use extension cords for many of his appliances.

He had told the superintendent that he "didn't feel comfortable with using the extension cords," and did not use them for long periods of time because they would get hot. Plaintiff also complained that once or twice a week the fuses in the apartment would blow and shut down the electric current in his apartment; until the building's circuitry was upgraded in the basement, the blown fuses in his apartment sometimes shut down the current in the whole building.

The superintendent testified that he had had several conversations with plaintiff over time about updating the electrical system in the apartment and that defendant had repeatedly refused to make the repairs due to their cost. The superintendent testified that plaintiff's use of the air conditioner in particular had been the cause of many of the fuse blowouts in the past. He said that he had advised plaintiff not to use too many appliances at one time and to use power strips because they would decrease the number of blown fuses.

Defendant had upgraded the electrical outlets and power in at least one other apartment in the building. Plaintiff contends that this is proof that defendant was aware that plaintiff's apartment's electrical outlets and wiring had become inadequate for current appliances, requiring cobbled-together solutions such as the use of extension cords and decisions about which appliances to use when. Plaintiff argues that defendant's decision not to upgrade the electricity in his apartment, despite the apartment's history and his requests over the years, was a breach of its duty to keep the building safe and functional for all tenants.

Under these circumstances, the court properly denied defendant's motion for summary judgment. There is a triable issue of fact as to whether defendant had actual or constructive notice that a dangerous condition existed in plaintiff's apartment that it failed to remedy (see Santoni v Bertelsmann Prop., Inc., 21 AD3d 712, 713 [1st Dept 2005]). Specifically, plaintiff's expert raised factual issues as to whether the building's 1930s electrical system constituted a dangerous condition and whether defendant was on notice of same. Although the expert, a professional engineer, did not personally inspect the premises, he based his opinion that the fire was caused by overloaded electrical wires on specific factual evidence in the record and his knowledge of consumers' changed needs since the 1930s because of the invention and development of power-hungry personal appliances that simply require more electrical power (see Concord Vil. Owners, Inc. v Trinity Communications Corp., 61 AD3d 410 [1st Dept 2009]).

The dissent concludes that defendant cannot be found negligent because plaintiff's expert did not say that the wiring failed to meet applicable code standards. However, "[a]n owner of property has a nondelegable duty to maintain its property in a reasonably safe condition, taking into account the foreseeability of injury to others" (*Fuller-Mosley v Union Theol. Seminary*, 10 AD3d 529, 530 [1st Dept 2004], citing *Basso v Miller*, 40 NY2d 233, 241 [1976]). A multiple dwelling "shall be kept in good repair," and "[the] owner shall be responsible for compliance" with that obligation (Multiple Dwelling Law § 78 [1]). An owner must "exercise reasonable care in maintaining the property, *including the wiring*" (*Onetti v Gatsby Condominium*, 111 AD3d 496, 497 [1st Dept 2013] [emphasis added]). The question before us, therefore, is whether defendant's decision not to upgrade the electricity kept the apartment reasonably safe.

The dissent contends that plaintiff should adapt his electrical usage to the building's limitations rather than seek any kind of upgrade. Of course, he and his wife have adapted to the apartment's limitations by refraining from running certain appliances simultaneously, using a surge protector for plaintiff's computer and plugging cords into it, and using URL-certified extension cords to arrange the items in their living quarters. In addition to the air conditioner, plaintiff testified that he and his wife had a television, a microwave, a computer, at least three or four standing lights, and two or three fans. Plaintiff testified that in the area where the fire occurred, there were two extension cords in use, primarily for the television, the VCR and a lamp. On the night of the fire, a Vornado fan was also plugged in.

We are unwilling to conclude as a matter of law that plaintiff's lifestyle and electrical consumption are above and beyond the reasonable needs of any modern tenant. It will therefore be for the jury to decide if defendant had a duty that it breached to keep the apartment building, and plaintiff's apartment, reasonably safe. Concur—Renwick, Gesmer and Kern, JJ.

Friedman, J.P., and Webber, J., dissent in a memorandum by Webber, J., as follows: I would reverse and grant defendant's motion for summary judgment. In moving for summary judgment, defendant submitted admissible evidence, in the form of a fire marshal's report, establishing prima facie that the subject apartment fire originated from an extension cord or the multiple appliances plaintiff had plugged into it, and not from the building's internal wiring. In opposition, plaintiff failed to rebut this evidence, nor did he offer any evidence that the

building's wiring failed to meet code requirements or was otherwise defective.

As noted, defendant, plaintiff's landlord, moved for summary judgment on the ground that plaintiff's negligent use of extension cords to operate numerous appliances simultaneously, as opposed to any alleged defect in the apartment's electrical wiring, was the sole cause of the fire. In support of its motion, defendant submitted the fire marshal's report, which concluded that the fire had originated in the apartment's living room, in an "area of electrical wiring" located 3 feet from the west wall and 12 feet from the south wall. The report further indicated that the fire marshal observed "multiple extension cords plugged in to one outlet with power strip present," and noted a "2x4 area of charring to wooden floor boards with a plastic residue in area of charring." The report also noted that other than the charring to the specific portion of the wooden floor boards, there was no damage to the furniture lining the wall of the apartment closest to the charred floor boards and no damage to the wall itself.

In opposition, plaintiff argued that the fire marshal's report was ambiguous as to which electrical wiring caused the fire, asserting that the report "could be referring to the wire of the fan or some other appliance and not an extension cord." Plaintiff also submitted an affidavit by an expert who opined that defendant should have upgraded the building's wiring. Conspicuously absent from the expert's report, however, is any claim that the building's wiring failed to meet applicable code standards or was otherwise defective. Indeed, the expert did not even inspect the apartment.

The majority ignores the fire marshal's report and therefore does not address its conclusion that the fire originated in an area where the only present electrical wiring was plaintiff's extension and appliance cords or his observations of multiple extension cords plugged into one outlet, along with a "plastic residue in [the] area of charring."

The majority also ignores plaintiff's deposition testimony conceding that he knew using extension cords to operate numerous appliances simultaneously was dangerous, and that the extension cords would regularly become hot within an hour of use, necessitating that they be disconnected. The majority also errs to the extent it bases its result on the affidavit by plaintiff's expert, who (contrary to the majority's assertion) identified no "specific factual evidence in the record" to support the view that the fire originated from the building's wiring. Again, the expert—who never inspected the scene—simply

opined that the building's electrical wiring should have been upgraded to support plaintiff's desired usage, without identifying any evidence that the building's wiring failed to meet applicable legal standards or was otherwise defective.

The record establishes that the fire resulted from plaintiff's use of more power, through plugging multiple appliances into an extension cord, than the building's wiring could support. The premise of plaintiff's action is that, rather than moderating his use of power to conform to the building's electrical capacity (or at least using different outlets for different appliances), plaintiff was entitled to have defendant upgrade the building's wiring to accommodate his demand. However, in the absence of any evidence that the building's wiring did not meet code standards or was otherwise defective, no basis exists for imposing liability on defendant for declining to upgrade the building's wiring to suit plaintiff's desire for electrical usage.

What the majority refers to as plaintiff's "lifestyle and electrical consumption" must still be in accord with the building's electrical capacity. Since nothing in the record supports the view that defendant was obligated to upgrade the wiring, it follows that the fire must be attributed to plaintiff's use of more power than the building's wiring could support—conduct in which plaintiff persisted in spite of his admitted realization of the danger it presented—and that defendant is entitled to summary judgment (*see Robertson v New York City Hous. Auth.*, 58 AD3d 535 [1st Dept 2009]; *Zvinys v Richfield Inv. Co.*, 25 AD3d 358, 359-360 [1st Dept 2006], *lv denied* 7 NY3d 706 [2006]).

I therefore respectfully dissent. ▮